<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WANDA R., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 20-12273 (SDW) <br><br> **OPINION** <br><br> February 22, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Wanda R.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Hilton R. Miller's ("ALJ Miller") denial of Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Miller's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

Plaintiff filed for DIB on November 29, 2017, and for SSI on January 10, 2018, alleging disability beginning on October 11, 2016, due to anemia, anxiety, depression, a shoulder disorder, and obesity. (D.E. 9 (Administrative Record ("R.")) at 18, 87–88, 304–10, 336, 340.) The state agency denied Plaintiff's applications at the initial and reconsideration levels. (R. 95, 110, 128.) Plaintiff received a hearing before ALJ Miller on January 10, 2019, and he issued a written decision on June 14, 2019, finding that Plaintiff was not disabled. (R. 12–30.) The Appeals Council denied review on March 23, 2020, and Plaintiff subsequently filed the instant appeal in this Court. (R. 1–4; D.E. 1.) The parties timely completed briefing. (D.E. 14, 15.)

### B. Factual History

Plaintiff is forty-four years old and has previously worked as a nurse assistant, a position performed at a medium level of exertion, and a stock clerk, a position performed at a heavy level of exertion. (*See* R. 28, 38, 56, 65–66, 82.) The following is a summary of the medical evidence in the record.

Prior to 2012, Plaintiff reported struggling with obesity for much of her life. (*See* R. 423.) In April 2012, Dr. Ibrahim Ibrahim performed successful laparoscopic sleeve gastrectomy on Plaintiff. (R. 420–26.) Plaintiff reported going from "about 280 pounds prior to surgery" in 2012, to about 170 pounds in 2017. (R. 481; *see also* R. 524.) As of August 2018, Plaintiff, who stood at approximately 5'2", weighed 196.6 pounds. (R. 622.)

After Plaintiff's successful gastric bypass surgery, she developed microcytic anemia, for which she sought treatment in April 2015 with Carrie B. Wasserman, M.D. (R. 485.) Dr. Wasserman observed that Plaintiff had "significant iron deficiency anemia" and prescribed

intravenous iron treatments.  (R. 485–86; *see also* 524.)  During a check-up in October 2017, physician Stuart Goldberg, M.D. wrote a detailed history of Plaintiff's anemia treatments between 2016 and 2017 in which he observed Plaintiff's continual improvement, noted that Plaintiff's anemia was "[c]orrected per labs," and gave Plaintiff an "excellent" prognosis.  (R. 481–84.)

In addition to Plaintiff's issues with obesity and anemia, she suffered a workplace injury to her left shoulder in October 2016 for which she underwent two surgeries—one in May 2017, the other in October 2017—to repair "adhesive capsulitis."  (R. 58, 378–82, 474–79, 655.)  During the May 2017 surgery, the surgeon performed "[a]rthroscopic debridement including lysis of adhesions with manipulation under anesthesia and subacromial decompression . . . ."  (R. 477.)  During the October 2017 surgery, the surgeon performed "manipulation under anesthesia with intra-articular injection of Depo-Medrol . . . ."  (R. 475.)  After the surgeries, Plaintiff attended physical therapy sessions and took over-the-counter pain medication and prescription pain medication.  (R. 54, 55, 480.)  In March 2018, Plaintiff was cleared to return to light-duty work in December 2017, but in March 2018 she reported severe difficulty lifting her shoulder, dressing herself, and lifting items.  (R. 582.)  Plaintiff also reported that over-the-counter pain medication only partially reduced the pain.  (*Id.*)

Subsequent medical examinations revealed Plaintiff had limited range of motion in her left shoulder.  (R. 634, 639–42).  Despite that limitation, state agency medical consultants Dr. Nancy Simpkins and Dr. Mohammad Abassi opined that Plaintiff could perform a range of light exertion.  (*See* R. 90–92, 140–41.)  A March 2019 MRI, however, showed that Plaintiff had several impairments in her shoulder, including "mild glenohumeral joint effusion," "moderate rotator cuff tendonitis/strain," "subacromial subdeltoid bursitis," "a high-grade[,] partial-thickness distal

supraspinatus tear," "mild change of [acromioclavicular] osteoarthritis with spurring," and "subacromial spur." (R. 667.)

With respect to Plaintiff's mental health, during multiple physical examinations between April 2015 and May 2018, Plaintiff denied experiencing depression. (*See* R. 481–88, 587–602, 621–28.) In February 2018, the Division of Disability Services ("DDS") referred Plaintiff to psychologist Ernesto L. Perdomo, Ph.D for an evaluation. (R. 567.) Dr. Perdomo noted that Plaintiff reported that she felt depressed, but also confirmed that she had not sought psychiatric treatment. (*Id.*) Plaintiff did, however, take ten milligrams of Zolpidem at night to aid with sleep. (*Id.*) At the examination, Plaintiff "reported feelings of sadness, tiredness, no energy, no desire, no interest, no motivations, crying spells, insomnia, [and] withdrawal behaviors." (*Id.*) Dr. Perdomo opined that Plaintiff had "persistent major depression that appeared to be moderate," and that "[h]er condition will affect her ability to function effectively at [a] job." (R. 569.)

In August 2018, psychologist Joyce Echo, Ph.D performed a consultative examination on Plaintiff. (R. 635–38.) Plaintiff still had not sought psychiatric treatment, but stated that she was on a waiting list to see a psychologist. (R. 636.) Dr. Echo diagnosed Plaintiff with cyclothymia and an "[o]ther stressor related disorder," and found that Plaintiff "does likely have long-standing mood issues," but the condition could improve with formal treatment. (R. 638.)

After evaluating Plaintiff's mental health records, state agency consultants Dr. John Warren and Dr. Steven Reed opined that Plaintiff had moderate limitations in her ability to carry out detailed instructions, concentrate for extended periods, perform within a schedule, and complete a normal workday and workweek. (*See* R. 107–08.) Plaintiff also had moderate limitations in social interactions and in her ability to respond appropriately in a work setting. (R. 108.) Dr. Warren and Dr. Reed opined that Plaintiff can perform activities in the context of a

4

simple work setting, and can relate well enough with other people for workplace purposes. (R. 108, 121–22, 137–38.)

        **C.**        **Hearing Testimony**

At the administrative hearing on March 21, 2019, Plaintiff was represented by counsel. (R. 36.) ALJ Miller heard testimony from Minh Vu, M.D., an impartial medical expert. (R. 37, 40–50.) Dr. Vu opined that Plaintiff's impairments, singularly or in combination, did not meet or equal any listings. (R. 41.) According to Dr. Vu, Plaintiff's left shoulder injury did not meet the severity required in Listing 1.02(b) and did not meet the bilateral upper extremity requirement of the listing. (*Id.*) Dr. Vu further surmised that Plaintiff could "lift [twenty] pounds occasionally and ten pounds frequently, stand[]/walk[] six hours in a day, . . . only occasional[y] stoop, [with] no limits on sitting, and no heights or moving machinery," and Plaintiff had no manipulation limitations." (R. 42.) Additionally, while Dr. Vu acknowledged Plaintiff was overweight at the time of the hearing, he maintained that the issue was not severe enough to impact any listing. (R. 41–42.) Finally, Dr. Vu opined that Plaintiff's severe anemia was not listing level or a type to which the anemia listing pertains. (R. 44.)

Prior to Dr. Vu's testimony, Plaintiff's counsel alleged that Dr. Vu was not neutral, claimed that Dr. Vu had been disrespectful to counsel in prior matters, and purported that Dr. Vu's accent was difficult to understand. (R. 39, 42.) Counsel also challenged Dr. Vu's knowledge of shoulder abduction. (R. 45–49.) ALJ Miller noted Plaintiff's objection and discussed counsel's concerns about Dr. Vu's knowledge of shoulder abduction. (R. 39, 47–50.) Counsel also expressed concern about Dr. Vu testifying prior to Plaintiff. (R. 49–50.) The court assured counsel that the order of testimony was proper. (*Id.*)

ALJ Miller heard additional testimony from Marilyn Stroud ("VE Stroud"), an impartial vocational expert. (R. 63–80.) VE Stroud testified that an individual with Plaintiff's vocational background and residual functional capacity ("RFC"), as assessed by ALJ Miller, could work at a sedentary exertion level in positions such as an addresser (34,000 jobs available in the national economy), a telephone information clerk (319,000 jobs available in the national economy), or a cutter and paster (95,000 jobs available in the national economy). (R. 67–68.)

## II.   LEGAL STANDARD

### A.   Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at

*2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he [or she] accepts and which he [or she] rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. A claimant will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the claimant "not only unable to do his [or her] previous work but [unable], considering his [or her] age, education, and work experience, [to] engage in any kind of substantial gainful work [that] exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step, sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at

any step that a claimant is or is not disabled, the ALJ does not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571–76, 416.920(a)(4)(i).  SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit."  20 C.F.R. §§ 404.1510, 416.910.  If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits, regardless of the severity of the claimant's impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on the claimant's ability to work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If

8

an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). RFC is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis, where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§

404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   DISCUSSION

#### A.   The ALJ's Decision

On June 14, 2019, ALJ Miller issued a decision concluding that Plaintiff was not disabled from October 11, 2017, through the date of the decision.  (R. 18–30.)  At step one, the ALJ found that Plaintiff had not engaged in SGA since the alleged onset date.  (R. 20–21.)  At step two, he found that Plaintiff had the following severe impairments:  "a left shoulder disorder; anemia; obesity; and depression."  (R. 21.)  At step three, he concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing.  (R. 21–22.)  Specifically, Plaintiff's mental impairments did not meet the requirements of Listing Sections 1.02 (Major Dysfunction of a Joint), 7.05 (Hemolytic Anemias), and 12.04 (Depressive, Bipolar, and Related Disorders).  (R. 21.)  The ALJ also considered Plaintiff's obesity when evaluating these listings.  (R.22.)

In ALJ Miller's analysis of Listing Sections 1.02 and 7.05, he adopted Dr. Vu's findings and certified that Plaintiff did not meet the requirements of the listings. (R.21.)  ALJ Miller then examined Listing Section 12.04.  (R.21–22.)  To meet this Listing, a claimant must prove that he or she meets both the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.  Paragraph A requires that claimant have a "[d]epressive disorder, characterized by five or more" enumerated criteria, or "[bi]polar disorder, characterized by three or more" enumerated criteria.  *See id.* § 12.04(A)(1)–(2).[2]  Paragraph B requires that a claimant have

---

[2] The depressive disorder criteria are:  "a. Depressed mood; b. Diminished interest in almost all activities; c. Appetite disturbance with change in weight; d. Sleep disturbance; e. Observable psychomotor agitation or retardation; f.

10

> [e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning . . . :
>
> 1. Understand, remember, or apply information . . . .
> 2. Interact with others . . . .
> 3. Concentrate, persist, or maintain pace . . . .
> 4. Adapt or manage oneself . . . .

*Id.* at § 12.04(B)(1)–(4). Paragraph C requires that a claimant's "mental disorder in this listing category is 'serious and persistent'" and that the claimant have medical documentation that the disorder has existed over at least a two-year period, with evidence of ongoing mental health treatment "that diminishes the symptoms and signs of [the claimant's] mental disorder" and "marginal adjustment" in the claimant's ability and "minimal capacity to adapt to changes in . . . environment or to demands that are not already part of . . . daily life." *Id.* at § 12.04(C)(1)–(2).

Based on Plaintiff's medical records, ALJ Miller found that Plaintiff's impairment satisfied various paragraph A criteria. (*See* R. 21.) Plaintiff, however, failed to meet the paragraph B criteria. (*Id.*) While Plaintiff had mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; and moderate limitation in adapting or managing oneself, Plaintiff's mental impairments did not cause one extreme or two marked limitations. (R. 21.) The court also found that the paragraph C criteria were not met because Plaintiff did not present evidence showing a "serious and persistent mental disorder of two or more years," "evidence of mental health therapy," and "minimal capacity to adapt to changes" to her environment or "demands that are not already part of . . . daily life." (R. 22.)

Assessing Plaintiff's RFC, ALJ Miller found that Plaintiff could:

---

Decreased energy; g. Feelings of guilt or worthlessness; h. Difficulty concentrating or thinking; or i. Thoughts of death or suicide." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(A)(1). The bipolar disorder criteria are: a. Pressured speech; b. Flight of ideas; c. Inflated self-esteem; d. Decreased need for sleep; e. Distractibility; f. Involvement in activities that have a high probability of painful consequences that are not recognized; or g. Increase in goal-directed activity or psychomotor agitation." *Id.* at § 12.04(A)(2).

> [P]erform sedentary work . . . except that she is limited to lifting and/or carrying up to 10 pounds occasionally; and less than 10 pounds frequently; stand and/or walk [and] sit with normal breaks for a total of about 2 hours in an 8-hour workday; . . . occasionally climb ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, kneeling, crouching, stooping[,] and no crawling; [no] hazards such as dangerous machinery, motor vehicles, unprotected heights[,] or vibrations; no overhead reaching with the left upper extremity; . . . occasional reaching in all other directions with the left upper extremity; [perform] frequent fine and gross manipulation in a right[-]hand dominant individual; . . . perform[] . . . simple, routine[,] and repetitive tasks that can be explained, specifically SVPs 1 and 2, which involve making simple decisions; and only occasional changes in routine.

(R. 23 (citing 20 C.F.R. 404.1567(a) and 416.967(a)).) At step four, the ALJ found that someone with Plaintiff's RFC could not perform Plaintiff's past positions as a Nurse Assistant or a Stock Clerk. (R. 28.) At step five, the court relied on VE Stroud's testimony to find that Plaintiff could work as an addresser, a telephone information clerk, or a cutter and paster—jobs that existed in significant numbers in the national economy. (R. 28–29.) ALJ Miller therefore concluded that Plaintiff was not disabled under the Act during the relevant period. (R. 29.)

**B.      Analysis**

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (*See* D.E. 14 at 1.) Plaintiff asserts that the ALJ failed to adequately evaluate Plaintiff's obesity, the RFC determination was not based on substantial evidence and there was no rationale for his findings, the VE's testimony was insufficient to satisfy the step five burden, and the ALJ appeared to be biased against Plaintiff. (*See id.* at 4–36.) This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff argues that although ALJ Miller factored Plaintiff's obesity into his analysis of Plaintiff's impairments, and identified it as a "severe impairment[]," (R. 21), he did not properly consider Plaintiff's obesity in his step three analysis of the listings or in his formulation of Plaintiff's RFC. (*See* D.E. 14 at 10–14.) "[A]n ALJ must meaningfully consider the effect of a

12

claimant's obesity individually and in combination with her impairments" when assessing a claim at step three and beyond.  *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).  However, it is a claimant's burden to establish not just that "obesity *can* impair [her] ability to perform basic work activities," but to "specify[] *how* her obesity . . . affected her ability to perform basic work activities."  *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020).

  Here, ALJ Miller found that Plaintiff's obesity was a severe impairment at step two because her obesity "significantly limit[ed] the ability to perform basic work activities."  (R. 21.)  At step three he applied SSR 02-1p to consider Plaintiff's obesity in combination with her other impairments and determined that her conditions did not meet or equal a listing.  (R. 21–22.)  He specifically addressed Plaintiff's obesity when discussing her severe impairments and RFC, citing medical evidence that referenced her history of obesity, gastric bypass surgery, approximate hundred-pound weight-loss since the surgery, and current weight and BMI index.  (R. 22, 24–25 (citing R. 417–72, 481–524, 571–81, 587–620, 621–34, 639–42).)  The ALJ considered Plaintiff's obesity in relation to her impairments and found that "[a]lthough she is obese, her medical records show that she has lost upwards of 100 pounds since her 2012 gastric bypass surgery," and that "her records show no significant limitations [as a] result of obesity."  (R. 26.)

  In sum, ALJ Miller adequately addressed Plaintiff's obesity by referencing it throughout the sequential evaluation process; citing specific pages in the record documenting her surgery, weight loss over time, and current weight, and current BMI; and addressing the lack of record evidence indicating significant limitations due to obesity.  Plaintiff presented no evidence that she could not perform basic activities associated with work and failed to demonstrate that her obesity caused her to suffer from medically determinable impairments.  This Court therefore concludes

that, with respect to obesity, ALJ Miller's step three findings and RFC determination are supported by substantial evidence.

Second, Plaintiff contends that ALJ Miller's RFC determination was not based on substantial evidence and there was no rationale for his findings. (*See* D.E. 14 at 14–24.) Plaintiff specifically focuses on her left arm impairment and argues that the ALJ did not base his RFC findings on the medical opinions in the record and did not include a rationale for his assessment. (*See* D.E. 14 at 18–22.) Plaintiff further challenges the findings relating to Plaintiff's mental illness and argues that the ALJ did not provide an adequate rationale for rejecting two psychologists' conclusions. (*See* D.E.14 at 22–24.)

When determining a claimant's RFC, an "ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). An ALJ determines a claimant's RFC "based on all of the relevant medical and other evidence" the claimant provides. 20 C.F.R. § 404.1545((a)(3). An ALJ considers the persuasiveness of medical opinions and "will explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision"— but is not required to explain his or her consideration of additional factors. 20 C.F.R. § 404.1520c(b)(2), (c)(1)–(5). "[T]here is no format to which an ALJ must adhere when giving h[is] reasoning so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Tompkins v. Astrue*, Civ. No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). An ALJ must "sufficiently address[] the medical evidence," but the ALJ is not required to address "every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 App'x 130, 133 (3d Cir. 2004).

Here, in determining the RFC, ALJ Miller carefully considered Plaintiff's medical records and testimony, as well as medical opinions pertaining to Plaintiff's shoulder injury, and found that Plaintiff can perform sedentary work that requires lifting ten pounds or less, has a restricted range of postural maneuvers, and cannot perform overhead reaching with the left arm. (R. 22–23.) He also found Plaintiff can perform "frequent fine and gross manipulation in a right[-]hand dominant individual." (R. 23.) The ALJ discussed in detail Plaintiff's medical records, including surgery records, physical therapy records, and physical examinations. (R. 24–26.) He confirmed that Plaintiff's records indicate that she had limited range of motion in her shoulder and noted that Plaintiff had full use of her right arm. (R. 26.) He thoughtfully detailed Plaintiff's testimony about the limitations she experienced with her left shoulder, as well as the symptoms and pain she experienced. (*See* R. 23–24.) He observed, however, that Plaintiff's 2018 vacation to Puerto Rico demonstrated that she could "sit on a plane for several hours to leave the country for recreational activities," which suggested "a higher level of pain tolerance and physical functioning than her testimony would indicate." (R. 26.) He also discussed Dr. Vu's testimony, Dr. Simpkins and Dr. Abassi's shared state agency consultant opinion, and the opinions of Hudson Crossing Surgery Center physicians. (R. 24, 27–28.) ALJ Miller found testimony and opinions that Plaintiff can do light exertional work or greater than light exertional work unpersuasive because Plaintiff's "left shoulder pain and limitations do limit her to sedentary exertional activities, even if she has tested as having a much higher level of physical functioning than her testimony would indicate." (R. 27.)

ALJ Miller also thoughtfully considered Plaintiff's mental health impairments and found that while "her depression limits her to simple tasks involving only occasional changes in routine," there is "nothing in medical evidence of record [that] shows [Plaintiff] is precluded from performing mental or physical-related work activities." (R. 26.) He noted that Plaintiff's medical

records show that she "denied experiencing depression during her physical examinations." (R. 26.) He also outlined in detail the results of Plaintiff's psychological consultative examinations by Dr. Perdomo and Dr. Echo, as well as Dr. Warren and Dr. Reed's shared state agency medical opinion. (R. 27.) ALJ Miller found that Dr. Perdomo's opinion was vague because it evaluated Plaintiff's mental and physical conditions in combination. (*Id.*) He found that Dr. Echo's opinion was somewhat persuasive, but it contained speculation and analysis based on academic deficit instead of depression. (*Id.*). He considered the medical consultation opinions somewhat persuasive because they were consistent with medical records. (*Id.*) Importantly, he pointed out that Plaintiff had not received any mental health treatment and noted that Plaintiff confirmed "that her psychotropic medication alone did not help her much." (R. 26.) Despite that fact, the ALJ observed, Plaintiff still had not pursued outpatient treatment. (*Id.*)

In addition to considering Plaintiff's shoulder injury and mental health, ALJ Miller factored Plaintiff's anemia and obesity into his analysis. (R. 25–26.) He discussed Plaintiff's various anemia treatments and described her gastric bypass surgery and weight loss history. (R. 24–25.) In doing so, he found that "[h]er anemia has been stable for a number of years," and "her records show no significant limitations [as a] result of obesity." (R. 26.) ALJ Miller presented a detailed analysis of the RFC as it pertains to Plaintiff's limitations and based his analysis on substantial medical record evidence. Plaintiff fails to point to any medical evidence that was overlooked or analyzed improperly.

Third, Plaintiff asserts that the VE's testimony was insufficient to satisfy the step five burden. Plaintiff argues that the hypothetical question ALJ Miller posed to VE Stroud was inadequate because Plaintiff cannot perform bilateral frequent gross manipulation or reach her left hand more than twelve inches from her body. (*See* D.E. 14 at 24–29.) Plaintiff further argues that

16

the VE's discussion of sheltered workshop jobs is inappropriate because those are not competitive employment positions. (R. 27–28.) Plaintiff also finds fault with the VE's inclusion of an addresser position because Plaintiff cannot keyboard adequately. (*See* R. 28.) And, Plaintiff alleges that the ALJ insufficiently discussed VE Stroud's testimony in the opinion. (*See id.*)

A hypothetical question need only reflect those credibly established functional limitations that are supported by the record. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). The Third Circuit requires that "limitations that are supported by medical evidence and are 'otherwise uncontroverted in the record' must be included in the ALJ's hypothetical," but "does 'not require an ALJ to submit to the [VE] every impairment *alleged* by a claimant.' Rather, the ALJ is only required to submit credibly established limitations." *Zirnsak v. Colvin*, 777 F.3d 607, 614–15 (3d Cir. 2014) (quoting *Rutherford*, 399 F.3d at 554). Because the ALJ's RFC determination was supported by the record, including his finding that Plaintiff can perform frequent gross manipulation, the hypothetical question to the VE captured Plaintiff's established functional limitations, and the ALJ was not required to ask the VE any further questions regarding additional limitations.

Regarding VE Stroud's testimony about potential sheltered workshop jobs, the discussion pertained only to the cutter and paster position, which may include sheltered workshop jobs, but the VE did not specify that all of those jobs were sheltered workshop positions. (R. 69–74.) Furthermore, two other types of jobs were available, thus Plaintiff would still be capable of performing jobs that exist in significant numbers in the national economy. (*See* R. 29.) Similarly, while Plaintiff argues that she could not perform the addresser position, that would still leave at least one other position available, which has over 319,000 jobs available nationally, thus the argument fails. Finally, Plaintiff has presented no controlling law indicating that the ALJ must

17

present detailed testimony of the VE in his opinion. ALJ Miller provided an adequate recitation of the VE's findings, declared her findings consistent with SSR 00-4p, and summarized his analysis. (*See* R. 29.) Plaintiff, therefore, has not established that the step five analysis is deficient.

Finally, Plaintiff alleges that ALJ Miller appeared to be biased. (*See* D.E. 14 at 29–36.) Plaintiff contends that the ALJ improperly permitted Dr. Vu to testify despite Plaintiff's objection that Dr. Vu had given "non-neutral and Commissioner[-]friendly" testimony in prior hearings, had insulted counsel in prior hearings, and spoke "broken English" that counsel had difficulty understanding. (D.E. 14 at 33.) Plaintiff further criticizes the ALJ for providing Dr. Vu with the definition of shoulder abduction during his testimony. (R. 34.) Finally, Plaintiff adds that the ALJ improperly had Dr. Vu testify prior to Plaintiff's testimony. (R. 34–36.)

A hearing to determine whether a clamant is disabled should be "full and fair," and "should be 'understandable to the layman claimant, should not necessarily be stiff and comfortable only for the trained attorney, and should be liberal and not strict in tone and operation.'" *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 400–02 (1971). Accordingly, "[e]ssential to a fair hearing is the right to an unbiased judge." *Id.* (citing *Hummel v. Heckler*, 736 F.2d 91, 93 (3d Cir. 1984)). If a claimant suspects an ALJ is biased, "[t]he claimant must bring any objections to the attention of the ALJ, and the ALJ shall decide whether to continue the hearing or withdraw." *Id.* (citing 20 C.F.R. §§ 404.940, 416.1440 (1994)). If the judge does not withdraw, the claimant may appeal and pursue a revised decision or new hearing. *Id.*

Here, Plaintiff's allegations are without merit. At no point during the hearing did Plaintiff accuse ALJ Miller of bias or request that he withdraw from hearing the case. (*See* R. 36–81.) Plaintiff alleged that Dr. Vu had given non-neutral testimony and insulted counsel in prior

18

hearings, and that Dr. Vu's accent made him difficult to understand. Yet, Plaintiff presented no evidence to support those allegations, and presented no controlling law providing that a medical expert should be disqualified because he has an accent. ALJ Miller noted the objection and moved on to testimony, which was an appropriate response considering the unsupported objection. It is important to note that Plaintiff's objection specifically pertained to Dr. Vu, and at no time did Plaintiff allege that ALJ Miller was biased. (*See* R.39.)

Additionally, while ALJ Miller defined shoulder abduction during Dr. Vu's testimony, the record does not reflect that he did so out of bias or unfairness. (*See* R. 46–49.) The record shows that Plaintiff's counsel characterized ALJ Miller giving the definition as "inappropriate," but, again, counsel did not raise a bias objection or request that the ALJ withdraw. (R. 48.)

Finally, Plaintiff has not provided any precedent confirming that the order of witness testimony was improper. More importantly, even if there was impropriety in the order, Plaintiff did not object to the order of testimony at the time ALJ Miller called Dr. Vu to testify, and instead challenged the order *after* the testimony had already occurred. (*See* R. 36–50.) The timing of Plaintiff's challenge is akin to closing the barn door after the horse has departed. Plaintiff, in her argument, cites a court policy that provides the following:

> The Medical Expert (ME) must be present during the entire hearing, unless the ME has a reasonable and compelling reason to be absent during part of the hearing and the ALJ determines that such absence would not prevent the ALJ from conducting a full and fair inquiry into the matters at issue. If the ME was not present during the opening statement or relevant testimony (e.g., treatment, etc.), the ALJ must, before the ME testifies, summarize the opening statement or relevant testimony on the record.

(D.E. 14 at 35 (citing HALLEX I-2-359).) Plaintiff has not argued that Dr. Vu was not present during the opening statement, and the court policy cited does not explicitly require an ME to testify prior to a Plaintiff. In fact, Plaintiff's counsel was called upon to make an opening statement prior

19

to Dr. Vu's testimony but opted instead to impugn Dr. Vu's ability to give neutral testimony, accuse Dr. Vu of insulting counsel, and insult Dr. Vu for having an accent.  (*See* R. 39.) Furthermore, the ALJ gave Dr. Vu's testimony about Plaintiff's shoulder injury "little weight" in light of the record, thus the order of testimony appears not to have impacted Plaintiff's claim.  (R. 27–28.)  Consequently, Plaintiff has not demonstrated that ALJ Miller was biased in his adjudication of the matter and has not demonstrated bias resulting from the order of witness testimony.  Where, as here, substantial evidence supports the Commissioner's RFC finding and disability decision, that decision will be affirmed.

## IV.     CONCLUSION

For the foregoing reasons, this Court finds that ALJ Miller's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct.  The Commissioner's determination is therefore **AFFIRMED**.  An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk
cc:    Parties

20